# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

MATTHEW K. HALL,

      Petitioner,

      vs.

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,

      Respondent.

Case No. 1:12-CV-00347-REB

**MEMORANDUM DECISION
AND ORDER**

      Pending before the Court is Petitioner Matthew Hall's Petition for Review (Dkt. 1), filed July 9, 2012, seeking review of the Social Security Administration's final decision to deny his disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

      On February 27, 2009, Matthew Hall ("Petitioner") applied for disability insurance and supplemental security income benefits, alleging a disability onset date of December 15, 2007, when he was 22 years old. Petitioner's claim was initially denied on April 29, 2009 and, again, denied on reconsideration on August 27, 2009. (AR 19.) On October 7, 2009, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 19.) On December 7, 2010, ALJ John Molleur held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Jacob Alma Bernhardt, appeared and testified. (AR 19.) Mark J.

**MEMORANDUM DECISION AND ORDER - 1**

Schwager, an impartial vocational expert, also appeared and testified.

At the time of the hearing, Petitioner had past relevant work as a video rental clerk and a customer service clerk.  (AR 30.)  Petitioner last attended school in the twelfth grade.  (AR 30.)

On February 8, 2011, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  (AR 32.)  Petitioner timely requested review from the Appeals Council which was denied on May 7, 2012, rendering the ALJ's decision the Commissioner's final decision.  Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits.  Petitioner contends the ALJ erred by failing to properly: (1) evaluate all of Petitioner's severe impairments; (2) support his finding that Petitioner's testimony and allegations are not fully credible; (3) discredit the lay evidence of record; and (4) give appropriate weight to the medical opinion evidence of record.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

**MEMORANDUM DECISION AND ORDER - 2**

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner had not engaged in SGA since December 15, 2007, the alleged onset date. (AR 21.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: congenital heart disease with single functional ventricle; hypothyroidism; scoliosis status-post surgery; status-post encephalitis with shunt procedure; attention deficit hyperactivity disorder; and depression.  (AR 21).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id.*  Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 22.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's

**MEMORANDUM DECISION AND ORDER - 5**

past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a).  (AR 24.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here, the ALJ considered Petitioner's age, education, work experience, and residual functional capacity and determined that there are jobs existing in significant numbers in the national economy that Petitioner can perform.  (AR 30.)

**B.     Analysis**

       1.     <u>Petitioner's Impairments</u>

Petitioner contends that the ALJ erred in not assessing the impact of all of his physical impairments when formulating a residual functional capacity.  Petitioner further believes that the ALJ erred by failing to consider each of his impairments.  *See* Petitioner's Brief, p. 10 (Dkt. 22).

**MEMORANDUM DECISION AND ORDER - 6**

Petitioner argues that Social Security Ruling 96-3 provides a standard to be applied when determining if an impairment is severe.

Petitioner further argues that the ALJ is required to assess the impact of impairments that are not classified as severe when formulating his residual functional capacity assessment. Specifically, Petitioner takes issue with the ALJ's consideration of his hernia condition.  The ALJ notes that the record does not reflect continued treatment for hernia and therefore it does not meet the 12-month duration requirement.  (AR 21-22.)  *See* 20 C.F.R. § 404.1509, § 404.1520(a)(4)(ii).  The only mention of the hernia in the treatment record (AR 278) is contained in the medical history portion of a medical intake document.  The other mentions of the hernia come from lay witnesses, including his mother and grandparents, and in his application materials.  (AR 256-257, 189, 192, 194.)  Because the ALJ found the hernia did not meet the 12-month duration requirement and the medical record is devoid of anything beyond the fact that he had a surgery for a hernia, any error by the ALJ failing address it in the remainder of the decision is harmless.[1]

The Court finds similarly with respect to Petitioner's arguments regarding the ALJ's consideration of his scoliosis.  The ALJ found this to be a severe impairment (AR 21), but did not specifically address any limitations with respect to it in his RFC finding.  Although the ALJ did not explicitly consider the effects of the hernia and scoliosis, he considered all the symptoms in formulating his RFC.  Further, these impairments were devoid of almost any merit.  The only support for them were mentions of surgeries to correct them (AR 275, 278, 282, 318-319).

---

[1]  The only limitation Petitioner attributes to the hernia, is his inability to lift (AR 189).  Even though the ALJ found this impairment was not severe, he did include a limitation in Petitioner's ability to lift no more than 10 pounds in his RFC assessment (AR 24).

**MEMORANDUM DECISION AND ORDER - 7**

Petitioner has not shown any evidence of functional impairments due to these impairments that would have impacted the ALJ's analysis.  Given the meager medical support for a functional impairment resulting from such conditions, even if the ALJ failed to consider how these impairments might complicate other symptoms, that failure would constitute harmless error.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1040, 1054-55 (9th Cir. 2006) (noting that the ALJ commits harmless error when the mistake was "nonprejudicial" or "irrelevant" to the ultimate disability conclusion).  The ALJ stated that he considered all symptoms and the extent to which the symptoms can reasonably be accepted by the requirements of 20 C.F.R. § 404.1529 and § 416.929 and SSRs 96-4p and 96-7p.  (AR 24.)  In so doing, the ALJ stated that Petitioner's impairments do impose more than a minimal impact on the Petitioner's abilities to perform work-related activities. (AR 21.)

Petitioner also takes issue with the ALJ's evaluation of his congenital heart defect. Petitioner points out that his heart defect was added to Social Security's list of compassionate allowances, indicating it "nearly always leads to a finding of disability." Petitioner's Brief, Dkt. 22, p. 12.  The compassionate allowances initiative is a "way to expedite the processing of SSDI and SSI disability claims" for applicants with certain medical conditions.  In 2011, after the ALJ's decision was issued but prior to the Appeals Council's denial, the Social Security Administration amended POMS[2] to create compassionate allowances for individuals with a single ventricle. The suggested evaluation is that a person with a single ventricle may meet Listings 4.02, 4.06 or 104.06.  The compassionate allowance initiative specifically states, "[a]djudicators may, at their discretion, use the Medical Evidence of Record or the Listings

---

[2] POMS stands for Program Operations Manual System.

**MEMORANDUM DECISION AND ORDER - 8**

suggested to evaluate the claim," and it is likely correct to say that an individual with such a condition is often granted a finding of disability. But such a decision is not required, and "the decision to allow or deny the claim rests with the adjudicator."  POMS § DI 23022.590 *available at* https://secure.ssa.gov/apps10/poms.nsf/Inx/0423022590.  The fact that a condition is listing as a compassionate allowance does not dictate a finding of disability, rather it expedites process for evaluation.  Even though Petitioner's condition was not on the compassionate allowances list at the time of the ALJ's decision, even if it was, the ALJ would still have to make the same considerations as he did here.[3]

In this instance, the ALJ considered both Listing 4.02, chronic heart failure, and Listing 4.06, symptomatic congenital heart disease.  The ALJ found that the medical findings of the cardiologist do not meet the standards of listings 4.02 or 4.06.  (AR 22.)  Even Petitioner admits that his medical records do not show cyanosis at rest, as required for Listing 4.06.  Further, Listing 4.06 requires an oxygen saturation level of *less than* 90%, whereas Petitioner's oxygen saturation level was last noted to be 90%.  While these percentages are undoubtedly close, this further illustrates that Petitioner does not meet the Listing requirements.  This disease must be documented by appropriate medical imaging or cardiac catheterization.

Petitioner's additional argument that his combined impairments dictate a finding of disability is not persuasive on this record.  An ALJ does not, "as a matter of law, [have] to state

---

[3] Petitioner does not contend he has the required findings to satisfy Listing 4.02 or Listing 4.06; however, the ALJ considered both Listings in his decision.  The Court notes that this decision does not preclude Petitioner from submitting a new application to the SSA now that the compassionate allowances are in effect.  *See Thoreson v. Astrue*, 2013 WL 869375, * 20 n. 35 (D. Minn. Jan. 29, 2013).

**MEMORANDUM DECISION AND ORDER - 9**

why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

The ALJ appropriately and sufficiently evaluated and considered all of Petitioner's impairments, including his hernia and scoliosis.  The placement of his heart defect on the compassionate allowances list does not dictate a finding of disability and the ALJ properly assessed his condition under Listings 4.02 and 4.06.  The evidence in this regard is equivocal, and the ALJ could have reached a different conclusion, equally entitled to deference on review. But here, the decision fell within the proper bounds of the discretion afforded to the ALJ.

2.    Petitioner's Credibility

Petitioner also takes issue with the ALJ's conclusion that Petitioner's testimony concerning the intensity, persistence, and limiting effects of his symptoms is not credible. *See* Petitioner's Brief, p. 14 (Dkt. 14).  As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).  The ALJ may also consider location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* Soc. Sec. Ruling (SSR) 96-7p.   In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

**MEMORANDUM DECISION AND ORDER - 10**

Still, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.  The ALJ found that the Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the Petitioner's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent inconsistent with the above residual functional capacity assessment.  (AR 25.) The ALJ indicated that Dr. Womack diagnosed Petitioner with several conditions including: original anatomy of double inlet left ventricle; severe pulmonary stenosis with L-transposed great arteries; status-post shunts on the right in March 1986 and left in February 1989; status-post Fontan procedure with right atrial conduit; history of scoliosis status-post surgery June 2003; stable and mild right AV valve regurgitation with good ventricle function; and mild systemic desaturation not symptomatic. (AR 25.)   However, the ALJ further noted that despite these conditions, Dr. Womack nonetheless encouraged vigorous activities, and did not advise any restrictions.  Dr. Womack further stated that even though Petitioner's heart defect would slow down the rate of cardiac improvement, Petitioner would still see significant health benefits from vigorous physical activities such as walking or other enjoyable aerobic activities.  (AR 25.)

The ALJ also points to considerable evidence in the medical record indicating Petitioner has been poorly complaint with medication (AR 26) and that he continued to engage in binge drinking and marijuana use after being repeatedly counseled to abstain from all alcohol and drug consumption in view of "his regiment of antidepressant and other psychotropic medication."

**MEMORANDUM DECISION AND ORDER - 11**

The ALJ found such evidence to persuasively illustrate Petitioner's medical noncompliance. (AR 27.)  Further, in his discussion of the mental residual functional capacity assessment performed by Ms. Gonzalez, the ALJ described that the treatment records reveal that Petitioner's function is improved during times when he has decreased or discontinued use of marijuana and alcohol. (AR 29.)

The Court agrees with Petitioner, and Respondent concedes, that the ALJ inaccurately describes the assistance Petitioner received with his classes and schoolwork during high school (AR 29.)  Such an error, however, does not call for reversal or remand on this record, as the ALJ has provided other clear and convincing reasons for his assessment of Petitioner's credibility. The ALJ considered the medical record and limitations indicated by his treating physician, Dr. Womack, he noted that Petitioner was only irregularly compliant with taking his prescribed medication, and was medically noncompliant in continuing to use alcohol and marijuana after being repeatedly counseled to stop.  Further, the ALJ described at length the evidence in the record showing how Petitioner's alcohol and marijuana use appeared to affect his mental functioning (AR 26-27.)

Where, as here, there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002).  In other words, if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Court reviews the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the

**MEMORANDUM DECISION AND ORDER - 12**

assessment is supported by the requisite findings and record evidence.  Here, it is, and the Court
will not substitute its own assessment for that of the ALJ.

      3.    <u>Lay Evidence of Record</u>

      Petitioner believes that the ALJ erred when he failed to properly consider and evaluate
the lay evidence presented in multiple written statements by those who interact with Petitioner
regularly.[4]  *See* Petitioner's Brief, p. 16 (Dkt. 22).

      The ALJ must consider evidence from sources other than the claimant, including family
members and friends, in considering the severity of a claimant's impairment.  20 C.F.R.
§ 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  The ALJ is
required to consider competent lay testimony, but if such evidence is rejected, the ALJ only is
required to give reasons for doing so that are "germane to [the] witness."  *Carmickle v. Comm'r,
Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

      The Court agrees with Petitioner, as previously mentioned, that the ALJ inaccurately
describes the educational assistance Petitioner received during high school.  While this was not a
legitimate reason for rejecting the lay testimony, the ALJ did give other reasons that were
sufficient.  As to the lay testimony regarding Petitioner's mental impairments and limitations, the
ALJ accurately notes that such testimony is similar to that of Petitioner's own testimony
regarding his limitations; including his difficulties in school and his social and emotional
difficulties.  Such lay testimony then is properly described as corroborative, which is Petitioner's

---

    [4]  In his reply brief, Petitioner specifically takes issue with the ALJ's "failure to even
reference" the observations of employment specialist with Idaho Vocational Rehabilitation,
Rebecca Bradley.  *See* Petitioner's Reply Brief, p. 4 (Dkt. 27).  However, the ALJ does discuss
Ms. Bradley's observations in his decision when discussing the other lay testimony.  (*See* AR
28-29.)

**MEMORANDUM DECISION AND ORDER - 13**

emphasis, but that alone does not carry his disability claim across the finish line. When assessing

Petitioner's credibility, the ALJ noted that the medical record did not support Petitioner's

allegations, particularly the medical evidence from his treating physician Dr. Womack.

Additionally, the ALJ noted Petitioner's medical noncompliance with respect to using alcohol

and marijuana as well as his failure to take prescribed medication.  Additionally, the ALJ

focused on how Petitioner's alcohol and marijuana use affected his mental functioning.  The

Ninth Circuit has recognized that where, as here, the ALJ has provided clear and convincing

reasons for rejecting Petitioner's own subjective complaints and the lay witness's testimony is

similar to such complaints, "it follows that the ALJ also gave germane reasons for rejecting [his]

testimony."  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  The

Court finds that the ALJ gave germane reasons for rejecting the lay testimony of Petitioner's

friends and family.

    4.    <u>Petitioner's Medical Opinion Evidence</u>

       Petitioner contends that the ALJ gave improper weight (and, thereby, insufficient

deference) to the opinions of Petitioner's treating family physician, Dr. Hartman, and his treating

mental health professional, Ms. Joana Gonzales, P.A.  A treating physician's medical opinion is

entitled to special consideration and weight.  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir.

1989).  The treating physician's opinion is given such deference because the treating physician

"is employed to cure and has a greater opportunity to know and observe the individual." *Id.*

Where the treating physician's opinions are not contradicted by another doctor, they may be

rejected only for clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995).  Even if the treating physician's opinions are contradicted by another doctor, they can

**MEMORANDUM DECISION AND ORDER - 14**

only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record for doing so. *Id*.

Notwithstanding such deference, a treating physician's opinion on the ultimate issue of disability is not conclusive. *Rodriguez*, 876 F.2d at 762 (citations omitted); *see also* SSR 96-5P, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability."). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Evidence tending to discount the physician's opinion can include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

In regard to Petitioner, Dr. Hartman completed both a Residual Functional Capacity Questionnaire (AR 347-49) and a Mental Residual Functional Capacity Questionnaire (AR 350-53) in November 2010. The ALJ assigned Petitioner a limited range of sedentary functional capacity. (AR 29.) In doing so, he specifically relied upon portions of Dr. Hartman's RFC Questionnaire, specifically the lifting limitations. However, the ALJ states he specifically rejects Dr. Hartman's opinion that Petitioner would have frequent absences in the workplace. The ALJ states "there is no evidence in Dr. Hartman's treatment notes suggesting that, despite his limitations, the claimant is physically unable to attend work daily and persist in completing

**MEMORANDUM DECISION AND ORDER - 15**

assigned tasks." (AR 29.) The ALJ rejected Dr. Hartman's opinion about Petitioner's predicted

absences from work because he did not find support in Dr. Hartman's own treatment notes.

Conflicts within the treating physician's own treatment notes, as well as conflicts with the

opinions of other physicians, including in this case Petitioner's treating cardiologist, Dr.

Womack, are sufficiently clear and convincing reasons for rejecting Dr. Hartman's opinion. The

medical record contains sparse treatment notes from Dr. Hartman (AR 270-73), none of which

supports his contention that Petitioner would frequently be absent from work.

      With regard to the Mental Residual Functional Capacity questionnaire completed by Ms.

Gonzales, the physician assistant who treated Petitioner's mental health, the ALJ noted that she

reported "marked" limitations in every area, except one. (AR 354-57.) The ALJ found her

opinion to be conclusory in nature, and questioned the lack of explanation behind her "marked"

limitation conclusions. The ALJ also finds Ms. Gonzales' opinion contradicts her  own

treatment notes which indicate the "relative stability" of Petitioner's condition including that his

"attention and focus is maintained throughout the day." (AR 29; *See* AR 332-33.) The ALJ

notes that in addition to Ms. Gonzales' opinion being inconsistent with her own treatment notes,

it is also contradictory to the medical evidence as a whole, including the opinions of the state

agency physicians. (AR 29.) *See Young v. Heckler*, 803 F.2d 963, 967-68 (9th Cir. 1986)

(affirming the ALJ's rejection of a treating physician's opinion because it was brief and

contradicted by other opinions in the record). The ALJ adds that as a physician assistant, Ms.

Gonzales' "credentials are not of the same degree as the State agency physicians" and while this

alone can not be reason to reject her opinion, it can justify affording her opinion less weight. *See*

SSR 06-03p, *available at* 2006 WL 2329939 ("The fact that a medical opinion is from an

**MEMORANDUM DECISION AND ORDER - 16**

'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source . . .'").   The ALJ drew upon appropriate discretion in deciding what weight to give to Ms. Gonzales' opinion, and supported his decision to do so with clear and convincing reasons.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  See *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his conclusions with respect to most of the issues, despite the fact that such evidence may be susceptible to a different interpretation.  Indeed, in this case, this Court might well have found differently if was to decide the case *de novo*.  However, such a statement is drawn from a cold record, and it is not this Court's role to alter the ALJ's decision without some appropriate basis under the law for doing so, consistent with its role as a reviewing court only.  Here, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence.  Therefore, the Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

**MEMORANDUM DECISION AND ORDER - 17**

## V.  ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is DENIED, the

decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with

prejudice.

DATED:  **September 4, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**